# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| SCOTT SMADO, #B-03278, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | Case No. 17-CV-810-NJR |
| DAVID RAINS, DEREK RICE, KIM STEPHENS, TRAVIS JAMES, MRS. SLICHENMYER, PHIL MARTIN, and JAKE BROOKHART, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Scott Smado, an inmate currently housed at Robinson Correctional Center ("Robinson"), filed this action pursuant to 42 U.S.C. § 1983. Plaintiff brings allegations pertaining to the medical care he received (or failed to receive) at Robinson. (Doc. 1). Plaintiff seeks monetary damages and any further relief that the Court deems just. (Doc. 1, pp. 9-13).

This case is now before the Court for a preliminary review of the Complaint (Doc. 1) pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>     (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or

1

>               (2) seeks monetary relief from a defendant who is immune
>           from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## **The Complaint**

On January 28, 2017, at 1:00 am, Plaintiff began vomiting black liquid. (Doc. 1, p. 3). Plaintiff asked Hoalt, a correctional officer, to call the Healthcare unit. *Id.* Hoalt called the Healthcare unit and spoke with Rice, a nurse. *Id.* Rice told Hoalt to instruct Plaintiff to sign up for sick call because "everyone has a bug." *Id.* At 2:00 am Plaintiff vomited black liquid again. *Id.* At 3:00 am Plaintiff signed up for sick call. *Id.* At 4:45 am, Plaintiff was dizzy, pale, and drenched in sweat. *Id.* He rushed to Hoalt and asked Hoalt to call a code 3. *Id.* Hoalt called the Healthcare unit a second time and relayed Plaintiff's symptoms to Rice. *Id.* Rice, once again, stated that Plaintiff needed to sign up for sick call. *Id.* Hoalt advised Rice that Plaintiff had already signed up for sick call and hung up the phone. *Id.* Hoalt then asked Plaintiff if he had chest pains. *Id.* Plaintiff denied having any chest pains. *Id.* Concerned about the distress Plaintiff was in, however, Hoalt called a code 3 for chest pains anyway. *Id.*

Nursing staff took Plaintiff to the Healthcare unit. (Doc. 1, p. 4). Shah, a physician, and

Rice examined Plaintiff. *Id.* Plaintiff reported vomiting, chills, sweating, and dizziness. *Id.* Plaintiff's EKG readings were abnormal. *Id.* Accordingly, Shah gave Plaintiff medication and called an ambulance. *Id.* Emergency room staff determined that Plaintiff was bleeding internally and had lost a lot of blood. *Id.* Plaintiff received lifesaving treatment, including blood transfusions. *Id.* Further tests revealed Plaintiff had three ulcers in his esophagus and four ulcers in his stomach, which ruptured simultaneously. *Id.*

On February 23, 2017, Plaintiff found blood in his stool. *Id.* Plaintiff asked Kocher, a correctional officer, to contact the Healthcare unit. *Id.* Kocher called the Healthcare unit and reported Plaintiff's symptoms to Stephens, a nurse. *Id.* Stephens indicated that the physician was out and that Plaintiff would have to wait until tomorrow. *Id.* Because Plaintiff had recently received emergency treatment for internal bleeding, Kocher disregarded Stephens and sent Plaintiff for treatment at the Healthcare unit. *Id.* A member of the nursing staff, Cummings, tested Plaintiff's stool. (Doc. 1, p. 5). It was positive for blood. *Id.* Follow-up stool tests (2/24/2017 through 2/26/2017) also revealed the presence of blood.

After being taken to the healthcare unit on February 23, 2017, Plaintiff was also seen by James, a physician assistant. *Id.* James saw Plaintiff at 6:00 pm on February 23, 2017 (a Thursday). Cummings informed James that Plaintiff had blood in his stool. *Id.* James indicated that he would let the physician deal with Plaintiff on Monday.

On Monday February 27, 2017—four days after blood was detected in Plaintiff's stool—Plaintiff was seen by Shah. *Id.* Shah ordered tests and discovered that Plaintiff was bleeding internally and was losing blood. *Id.*

On several occasions, Plaintiff complained to Slichenmyer (the director of nursing), Martin (a healthcare administrator), Rains (the warden), and Brookhart (an internal affairs

officer) regarding his allegedly inadequate medical treatment on January 28, 2017, and February 23, 2017. (Doc. 1, pp. 5-7). Specifically, Plaintiff complained that Rice and Stephens failed to promptly address his medical complaints. *Id.* These Defendants took no action, indicating that because Plaintiff was presently receiving medical care, no action was necessary. *Id.*

In addition, when Plaintiff complained to Brookhart, he asked if Plaintiff intended to file a lawsuit. (Doc. 1, pp. 6-7). At some point, Brookhart spoke to Plaintiff and threatened and harassed him. *Id.* He indicated that if Plaintiff filed a lawsuit naming Brookhart, he would have Plaintiff transferred to another prison. *Id.*

Plaintiff contends that Rice, Stephens, and James are subject to liability for acting with deliberate indifference towards Plaintiff's serious medical condition. (Doc. 1, pp. 4-5, 8-10). Plaintiff contends that Slichenmyer, Martin, Rains, and Brookhart are liable for failing to adequately respond to and/or investigate Plaintiff's complaints about his inadequate medical treatment. (Doc. 1, pp. 10-13).

## **Merits Review Under § 1915(A)**

Based on the allegations of the Complaint, the Court finds it convenient to divide the *pro se* action into the following counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion regarding their merit.

**Count 1 –** Rice acted with deliberate indifference to Plaintiff's serious medical condition on January 28, 2017, in violation of the Eighth Amendment.

**Count 2 –** Stephens acted with deliberate indifference to Plaintiff's serious medical condition on February 23, 2017, in violation of the Eighth Amendment.

**Count 3 –** James acted with deliberate indifference to Plaintiff's serious medical condition on February 23, 2017, in violation of the Eighth Amendment.

**Count 4 –** Constitutional claim against Slichenmyer, Martin, Rains, and Brookhart

>           for failing to respond to and/or adequately investigate Plaintiff's complaints.
>
> **Count 5 –**   First Amendment prior restraint claim against Brookhart for threatening to transfer Plaintiff to another prison if Plaintiff filed a lawsuit naming Brookhart.

## Counts 1 – 3

To put forth a viable medical claim under the Eighth Amendment, Plaintiff must allege that officials were "deliberately indifferent to his serious medical needs." *Sherrod v. Lingle*, 223 F.3d 605, 610 (7th Cir. 2000). This claim involves a two-part inquiry: the plaintiff must first show that his condition "was objectively serious," and he must then allege that the defendants were deliberately indifferent towards his condition. *Id.*

For screening purposes, Plaintiff has alleged the existence of an objectively serious medical condition. An objectively serious condition is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001). Factors that indicate a serious condition include "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). Here, Plaintiff has alleged that he suffered from internal bleeding that required emergency treatment and that, even after receiving emergency treatment, he continued to exhibits signs of internal bleeding. That is enough to put forth a serious need, at least for screening purposes.

The next question is whether the officials named in connection with these counts exhibited deliberate indifference to Plaintiff's serious medical condition. The Court evaluates this issue with respect to each Defendant below.

While it is a closer case, Plaintiff has sufficiently alleged that Rice (**Count 1**) and James (**Count 3**) were deliberately indifferent to his serious medical condition. To be sure, deliberate indifference is a weighty state of mind requirement—allegations of "medical malpractice, negligence, or even gross negligence" do not "equate to deliberate indifference." *Johnson v. Doughty*, 433 F.3d 1001, 1012-13 (7th Cir. 2006). In this vein, a minor delay in referring a prisoner to treatment does not typically suggest deliberate indifference. *See*, *e.g.*, *Brown v. Darnold*, 505 F. App'x 584, 587 (7th Cir. 2013) (allegation there was a delay of two hours before treatment was given by another prison official did not suggest deliberate indifference); *Berry v. Peterman*, 604 F.3d 435, 442 (7th Cir. 2010) ("We do not suggest that a minor delay in treatment constitutes deliberate indifference."); *Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995) (no viable Eighth Amendment claim because prisoner did not allege two hour delay caused him any harm, and that amount of time did "not seem like an unreasonably long wait to x-ray, examine, and possibly cast" an injury). Where a prisoner alleges facts to suggest that the delay was willful or intentional, however, a prisoner *might* have a viable claim. *See*, *e.g.*, *Knight v. Wiseman*, 590 F.3d 458, 466 (7th Cir. 2009) (ruling that delay did not state a claim because there was no allegation of "willful ignorance or malice"); *Williams v. Liefer*, 491 F.3d 710, 716 (7th Cir. 2007) (affirming verdict where prisoner was delayed six hours in receiving treatment).

Here, Plaintiff has alleged that he was vomiting black liquid and, when his symptoms were reported to Rice, Rice instructed Plaintiff to sign up for sick call (twice). Plaintiff eventually received treatment in the healthcare unit (approximately three-and-a-half hours after his initial complaints), but only after a correctional officer disregarded Rice's instructions and sent Plaintiff to the healthcare unit. By the time Plaintiff received treatment at the emergency room, he was suffering from severe internal bleeding and required lifesaving treatment. Although a several hour delay in treatment for certain conditions (a broken bone or the stomach flu for instance) typically would not suggest deliberate indifference, a several hour delay for a prisoner who is vomiting blood and experiencing

internal bleeding is a different story. At this early stage in the litigation, the Court cannot say with certainty that Rice is not subject to liability. Discovery may reveal that Rice did not act with deliberate indifference; perhaps he did not know Plaintiff was vomiting blood and had no reason to believe Plaintiff required *immediate* treatment (it is unclear exactly what Rice knew about Plaintiff's symptoms). But such a determination cannot be made at this stage in the litigation. Accordingly, **Count 1** shall receive further review as to Rice.

The Complaint also states a claim for deliberate indifference as to James. According to the Complaint, despite being aware of Plaintiff's prior emergency treatment and confirming that Plaintiff had blood in his stool, James allowed Plaintiff to go without treatment for four days. These allegations are just enough to state an arguable claim at screening. Thus, **Count 3** may proceed as to James.

Plaintiff's Eighth Amendment claim against Stephens, however, must be set aside at the gate. Plaintiff says that a correctional officer spoke to Stephens, indicating that Stephens had blood in his stool. Stephens advised that Plaintiff would have to wait until the following day to see the physician. The correctional officer disregarded Stephens's directive and immediately sent Plaintiff to the Healthcare unit, where Plaintiff received treatment. These allegations do not suggest deliberate indifference. Rather, the Complaint suggests that despite Stephens's initial disregard of Plaintiff's request for medical care, Plaintiff received prompt treatment, and no adverse consequences are alleged. *See, e.g., Knight v. Wiseman*, 590 F.3d 458, 466 (7th Cir. 009) (noting that two-and-a-half hour delay in treatment of plaintiff's shoulder injury "was minimal and had no adverse consequences"). Therefore, **Count 2** shall be dismissed without prejudice for failure to state a claim.

## Count 4

Plaintiff suggests that Slichenmyer, Martin, Rains, and Brookhart are subject to liability for failing to take action in response to Plaintiff's complaints about constitutional violations that

7

allegedly occurred on January 28, 2017 and February 23, 2017. It is unclear what type of claim Plaintiff intends to assert as to these Defendants. Typically, "inaction following receipt of a complaint about someone else's conduct is not a source of liability." *Estate of Miller by Chassie v. Marberry*, 847 F.3d 425, 428-29 (7th Cir. 2017). *See also Aguilar v. Gaston-Camara*, 2017 WL 2784561, *4 (7th Cir. 2017) (the Seventh Circuit has "rejected the notion that 'everyone who knows about a prisoner's problems' will incur § 1983 liability.") (citing *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009)). Nonetheless, under certain circumstances, a prison official's knowledge of an ongoing constitutional violation can trigger a duty to investigate and take action to rectify the violation. *See e.g., Perez v. Fenoglio,* 792 F.3d 768, 781-82 (7th Cir. 2015) ("a prison official's knowledge of prison conditions learned from an inmate's communications can, under some circumstances, constitute sufficient knowledge of the conditions to require the officer to exercise his or her authority and to take the needed action to investigate and, if necessary, to rectify the offending condition.") (citing *Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996)).

The allegations in this case, however, do not suggest that Slichenmyer, Martin, Rains, or Brookhart are subject to liability under the latter. Plaintiff complained to the subject officials about constitutional violations that occurred in the past and were not ongoing. Thus, there was no reason for these individuals to intervene on Plaintiff's behalf.

Accordingly, **Count 4** shall be dismissed without prejudice for failure to state a claim.

## Count 5

Plaintiff contends that Brookhart threatened to have Plaintiff transferred to another prison if Plaintiff filed a lawsuit naming Brookhart as a defendant. Prison officials may not take adverse actions against a prisoner to inhibit him from exercising his constitutional rights. Such action is

8

considered a prior restraint on protected speech. *See Fairley v. Andrews*, 578 F.3d 518, 525 (7th Cir. 2009) (The First Amendment protects "speakers from threats of punishment that are designed to discourage future speech."). The allegations in Plaintiff's Complaint regarding Brookhart's threats, though minimal, state an arguable First Amendment claim for prior restraint. The Court notes, however, that in order to maintain this claim, Plaintiff will have to meet the additional requirements (causation and proof of damages) discussed in *Fairley*.

Accordingly, **Count 5** shall receive further review as to Brookhart.

### Pending Motions

Plaintiff's Motion for Service of Process at Government Expense (Doc. 3) is **DENIED**. The Court will order service as a matter of course upon all defendants who remain in this action pursuant to this screening order because Plaintiff is a prisoner who has also requested permission to proceed in this action as a poor person.

### Disposition

**IT IS HEREBY ORDERED** that **COUNT 1** shall **PROCEED** against **RICE.**

**IT IS FURTHER ORDERED** that **COUNT 2** is **DISMISSED** without prejudice for failure to state a claim.

**IT IS FURTHER ORDERED** that **COUNT 3** shall **PROCEED** against **JAMES.**

**IT IS FURTHER ORDERED** that **COUNT 4** shall be **DISMISSED** without prejudice for failure to state a claim.

**IT IS FURTHER ORDERED** that **COUNT 5** shall **PROCEED** against **BROOKHART**.

**IT IS FURTHER ORDERED** that **STEPHENS, SCLICHENMYER, MARTIN,** and **RAINS** are **DISMISSED** from the Complaint without prejudice for failure to state a claim. The

Clerk of the Court is **DIRECTED** to **TERMINATE** these individuals as Defendants in CM/ECF.

**IT IS FURTHER ORDERED** that as to **COUNTS 1, 3** and **5**, the Clerk of Court shall prepare for **RICE, JAMES,** and **BROOKHART**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each defendant's place of employment as identified by Plaintiff. If any defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, the defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Donald G. Wilkerson for further pre-trial proceedings. Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Donald G. Wilkerson for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, despite the fact that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: September 14, 2017**

  
_____  
**NANCY J. ROSENSTENGEL**  
**United States District Judge**