IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| SCOTT SMADO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 3:17-CV-810-MAB |
| | ) | |
| DEREK RICE and TRAVIS JAMES, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

Plaintiff Scott Smado filed this action under 42 U.S.C. § 1983 alleging various officials at Robinson Correctional Center violated his constitutional rights (Doc. 1). Now pending before the Court is a Motion for Summary Judgment filed by Defendants Derek James and Travis Rice (Doc. 113). Defendants argue there is insufficient evidence to find them deliberately indifferent to Plaintiff Scott Smado's serious medical needs. Smado filed a timely response in opposition (Doc. 120), and Defendants filed a timely reply (Doc. 125). For the reasons set forth below, the motion is granted in part and denied in part.

### BACKGROUND

Plaintiff Scott Smado, a former inmate of the Illinois Department of Corrections, filed this lawsuit pursuant to 28 U.S.C. § 1983 on July 31, 2017, alleging Defendants Rice and James violated the Eighth Amendment to the U.S. Constitution when they acted with deliberate indifference to his serious medical needs (Doc. 1). Specifically, Smado alleges that Rice, a registered nurse, refused to see him in the health care unit ("HCU") for

Page 1 of 13

complaints of vomiting "dark liquid," and that James refused to provide him treatment for blood in his stool (*Id.*).

Smado's complaints stem from events that occurred in January and February 2017 when he was an inmate at Robinson Correctional Center. Prior to that time, Smado had been on multiple pain medications, which caused him to develop Gastroesophageal Reflux Disease (GERD) (Doc. 120-1). To counteract his GERD, Smado was prescribed the drug famotidine[1] (*Id.*). On December 20, 2016, a doctor at Robinson discontinued the famotidine, but kept him on the pain medications (*Id.*). The nursing staff at Robinson was aware of Smado's GERD and that the famotidine had been discontinued (*Id.*).

On January 27, 2017, Smado did not eat anything all day and was feeling sick (*Id.*; Doc. 114-1 at p. 5). Around 1 a.m. on January 28, 2017, Smado vomited black liquid (*Id.*). He went out to the control center and told a correctional officer, Officer Hoalt, that he was throwing up black liquid (*Id.*). Smado testified that Officer Hoalt called the HCU, but that Defendant Rice told Hoalt to have Smado sign up for sick call (*Id.*).

Smado returned to his wing and laid down, but soon began to feel sick again (*Id.*). Around 2 a.m., he vomited black liquid a second time (*Id.*). At 3 a.m., it happened yet again (*Id.*). At this point, Smado signed up for sick call (*Id.*). But by 4:30 a.m., he started to feel very sick, dizzy, and sweaty (*Id.*). He went back out to the control center and told Officer Hoalt that he needed to go to the HCU (*Id.*). Smado testified that Officer Hoalt again called the HCU, but Rice said Smado could wait a couple more hours for sick call

---

[1] Famotidine is used to treat and prevent ulcers in the stomach and intestines. It can also be used to treat GERD and other conditions in which the stomach produces too much acid. *Famotidine*, DRUGS.COM, https://www.drugs.com/famotidine.html (last visited Oct. 27, 2020).

(*Id.*). Officer Hoalt told Smado the only way he could get to the HCU is if he had chest pains (*Id.*). Smado said he did not have chest pains but that he just "did not feel right" (Doc. 114 at ¶ 7). Officer Hoalt observed that Smado was pale and covered in sweat, so he called a Code 3 for chest pains anyway (*Id.*; Doc. 114-1 at p. 6).

After Rice and other staff arrived to take Smado to the HCU around 4:55 a.m., Smado told Rice he had been vomiting "black stuff" all night (*Id.*; Doc. 114-2 at p. 734). Rice hooked Smado up to an EKG and told Smado he was there for chest pains, not for vomiting (Doc. 120-1 at ¶ 17). Rice did not investigate Smado's complaint about vomiting black liquid for 45 minutes (*Id.* at ¶ 18). Around 5:30 a.m., a different nurse told the doctor to call an ambulance (*Id.*). As he was being placed on the stretcher, Smado vomited black liquid again (*Id.*). The ambulance driver said Smado was "bleeding out" and that they had to get him to the hospital (*Id.*).

At Crawford Hospital, Smado was given a blood transfusion and anticoagulants (*Id.* at p. 8). Once the bleeding was under control, Smado was transferred to Carle Hospital, where the doctor found four ruptured ulcers in his esophagus and three ruptured ulcers in his stomach (*Id.*). Smado was diagnosed with hematemesis and melena secondary to NSAID-induced gastric ulcer and hyperkalemia (Doc. 120-1). The treating physician at Carle Hospital told Smado that his pain medication caused his stomach lining to thin and instructed Smado to report any cramping or bleeding immediately (Doc. 120-1 at ¶ 21). Smado returned to Robinson Correctional Center two or three days later (Doc. 114-1 at p. 10).

On February 23, 2017, Smado noticed blood in his stool and went to the HCU (*Id.*).

Smado attested that a nurse took a stool sample (*Id.*). She then told him that Defendant

Travis James, a physician's assistant, would be in at 6 p.m. and that she would let him

know about the blood in Smado's stool (*Id.*). The nurse also provided Smado with three

additional hemoccult test strips for use over the next three days (Doc. 114-2 at p. 768).

Defendant James did not call Smado to the HCU that evening, so Smado returned the

following day, February 24 (*Id.*). The same nurse took another stool sample, which came

back positive for blood, and told Smado he would see Dr. Shah on Monday because

Defendant James would not see him (*Id.*). On February 25, 2017, an RN Note was made

in Smado's medical records stating: "note left from PA James verbally telling RN to have

Dr. Shah address the note RN left for PA James on 2-23-17. This RN made IM appt [with]

Dr. Shah Mon." (Doc. 114-2 at p. 802). By time Smado saw Dr. Shah, the blood in his stool

had resolved (Doc. 114-1 at p. 13).

## LEGAL STANDARD

Summary judgment is appropriate where "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317,

322 (1986). The moving party bears the burden of establishing that no material facts are

in genuine dispute; any doubt as to the existence of a genuine issue must be resolved

against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970); *Lawrence v.*

*Kenosha Cty.*, 391 F.3d 837, 841 (7th Cir. 2004).

Once the moving party sets forth the basis for summary judgment, the burden then

shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue of fact for trial. FED. R. CIV. P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 232-24 (1986). The party opposing summary judgment must offer admissible evidence in support of his version of events; hearsay evidence does not create a genuine issue of material fact. *Durling v. Menard, Inc.*, No. 18 C 4052, 2020 WL 996520, at *2 (N.D. Ill. Mar. 2, 2020) (citing *McKenzie v. Ill. Dep't of Transp.*, 92 F.3d 473, 484 (7th Cir. 1996)). In determining whether a genuine issue of fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the non-movant. *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[i]nferences that rely upon speculation or conjecture are insufficient." *Armato v. Grounds*, 766 F.3d 713, 719 (7th Cir. 2014). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial." *Id.* (citation omitted).

## DISCUSSION

The Eighth Amendment prohibits cruel and unusual punishments, and deliberate indifference to the "serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution." *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 828 (7th Cir. 2009). To succeed on an Eighth Amendment deliberate indifference claim, a plaintiff must show: (1) that he suffered from an objectively serious medical condition; and (2) that the individual defendant was deliberately indifferent to that condition. *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010); *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011) (citing *Johnson v. Snyder*, 444 F.3d

Page 5 of 13

579, 584 (7th Cir. 2006)).

A medical condition is objectively serious if " 'a physician has diagnosed it as requiring treatment, or the need for treatment would be obvious to a layperson.'" *Lockett v. Bonson*, 937 F.3d 1016, 1023 (7th Cir. 2019) (quoting *Pyles v. Fahim,* 771 F.3d 403, 409 (7th Cir. 2014)). It is not necessary for such a medical condition to "be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated." *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010); *accord Farmer v. Brennan*, 511 U.S. 825, 828 (1994) (violating the Eighth Amendment requires "deliberate indifference to a *substantial* risk of *serious* harm") ((internal quotation marks omitted) (emphasis added).

Prevailing on the second prong requires a prisoner to show that a prison official has subjective knowledge of—and then disregards—an excessive risk to inmate health. *Id.* at 653. The plaintiff need not show the individual "literally ignored" his complaint, but that the individual was aware of the condition and either knowingly or recklessly disregarded it. *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008). "Something more than negligence or even malpractice is required" to prove deliberate indifference. *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014); *see also Hammond v. Rector*, 123 F. Supp. 3d 1076, 1086 (S.D. Ill. 2015) ("isolated occurrences of deficient medical treatment are generally insufficient to establish . . . deliberate indifference"). Deliberate indifference involves "intentional or reckless conduct, not mere negligence." *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010) (citing *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010)).

A prisoner is entitled to "reasonable measures to meet a substantial risk of serious

harm"—not to demand specific care. *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). A prisoner's dissatisfaction with a medical professional's prescribed course of treatment does not give rise to a successful deliberate indifference claim unless the treatment is so "blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate the prisoner's condition." *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) (quoting *Thomas v. Pate*, 493 F.2d 151, 158 (7th Cir. 1974)).

I.      **Defendant Derek Rice**

Defendant Rice has moved for summary judgment on the grounds that Smado lacks sufficient proof to demonstrate he was deliberately indifferent. According to Rice, Smado's allegations against Defendant Rice are based entirely on inadmissible hearsay. And even if the evidence was admissible and sufficient to create a genuine issue of material fact, it does not support Smado's claim that a delay in care constituted deliberate indifference.

In his deposition, Smado was asked what evidence he planned to use to prove that a corrections officer reported to Rice that he was vomiting black liquid. Smado explained that he had a Grievance Officer's Report in which Officer Hoalt discussed the events of January 28, 2017. In that report, Hoalt stated that Smado entered the control area between 4:30 a.m. and 5 a.m. and said he needed to go to the HCU (Doc. 120-3). Officer Hoalt told Smado that wasn't how things worked, but that he would call HCU and ask (*Id.*). The "HCU staff" told him to have Smado sign up for sick call, which he had already done previously during Hoalt's shift (*Id.*). When Smado was insistent that he needed to go to the HCU, Hoalt asked Smado if he was experiencing chest pains (*Id.*). Smado replied,

Page 7 of 13

"No, I just don't feel right." (*Id.*). Hoalt stated that he could tell Smado was "getting more and more agitated and by this point I/M Smado was slightly pale and covered in sweat. At this time I decided to call a Code 3." (*Id.*).

Smado does not dispute that this is evidence constitutes hearsay but instead asserts that he will subpoena Hoalt to testify at trial as to the events in January 2017. As is oft recited, however, "summary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003). Smado cannot use inadmissible hearsay evidence to defeat summary judgment, nor can he rely on unknown future trial testimony to support his claims.

Even if the Grievance Officer's Report was admissible under a hearsay exception, it fails to prove that Rice was aware of Smado's vomiting before he took Smado to the HCU. In the Grievance Officer's Report, Hoalt says that "HCU staff," not Rice, told him to have Smado sign up for sick call. Therefore, the Grievance Officer's Report does not support Smado's claim that Rice knew about his vomiting black liquid as early as 1 a.m. and failed to take appropriate action.

But just because Smado testified that the Grievance Officer's Report was his only evidence to support his claim means it truly is the only evidence in support of his claim.[2] Smado's testimony itself is evidence, and Smado testified at his deposition that around 1 a.m. he started vomiting black liquid (Doc. 114-1 at p. 5). Officer Hoalt called the HCU,

---

[2] *See* FED. R. CIV. P. 56(c)(3) ("*Materials Not Cited.* The court need consider only the cited materials, but it may consider other materials in the record.").

and Rice said Smado should sign up for sick call (*Id.*). After throwing up black liquid two more times and feeling like he was going to pass out, Smado returned to the control center (*Id.* at pp. 5-6). Smado testified that Hoalt called the HCU again, and Rice said Smado could wait a couple more hours for sick call (*Id.* at p. 6). When Smado told Hoalt he could not wait, Hoalt picked up the radio and called a Code 3 for chest pains (*Id.*).

While Defendants assert this testimony is double hearsay in their reply brief, they have not objected that the testimony cannot be presented in a form that would be admissible in evidence. *See* FED. R. CIV. P. 56(c)(2); *McGee v. Macon Cty. Sheriff's Dep't*, No. 16-CV-2221, 2020 WL 4464707, at *13 (C.D. Ill. July 20, 2020). Indeed, any statements made by Rice to Hoalt are not hearsay, as they constitute an opposing party's statement. FED. R. EVID. 801(d)(2)(A). And the statements that Hoalt made to Smado could be admissible as non-hearsay, to show the effect the statements had on Smado. That is, the statements could be used—not to prove that Hoalt told Smado he had to wait for sick call—but to show why Smado returned to his cell, only to vomit more blood before finally signing up for sick call and essentially begging Hoalt to take him to the HCU.

Without a proper objection that Smado's testimony cannot be presented in any admissible form, the Court finds Smado's testimony to be competent summary judgment evidence creating a genuine issue of material fact for trial. *See Lewandowski v. City of Milwaukee*, 823 F. App'x 426, 428–29 (7th Cir. 2020) (noting that a district court "cannot consider inadmissible hearsay, *over proper objections*, in deciding summary judgment") (emphasis added). If a jury were to credit Smado's testimony, it could reasonably find that Rice knew Smado was vomiting blood as early as 1 a.m., yet told Smado to wait until

sick call in the morning.

Even if Smado's testimony were disregarded, Rice still would not be entitled to judgment as a matter of law. The evidence in the record, when viewed in the light most favorable to Smado, establishes that, while en route to the HCU, Smado told Rice he had been vomiting "black stuff" all night (Doc. 114-1 at p. 6; Doc. 114-2 at pp. 734, 737). Yet, Rice hooked Smado up to an EKG and told Smado he was there for chest pains, not for vomiting (*Id.*). Smado attested that Rice did not investigate his complaints of throwing up black liquid for more than 45 minutes (Doc. 120-1). Under established Seventh Circuit law, even a brief delay in treatment can constitute deliberate indifference if it exacerbated the inmate's injury or unnecessarily prolonged his pain. *Perez v. Fenoglio*, 792 F.3d 768, 777–78 (7th Cir. 2015). Here, given the seriousness of Smado's condition, a reasonable jury could find that Rice knew of a substantial risk of harm to Smado's health but knowingly or recklessly disregarded that risk, thereby exacerbating his internal bleeding.

For these reasons, the Court finds that Defendant Rice is not entitled to summary judgment on Smado's claim of deliberate indifference.

## II.     Defendant Travis James

Defendants also move for summary judgment as to Defendant Travis James, arguing that Smado merely disagrees with James's clinical decision making. James was aware that Smado was evaluated in the HCU for blood in his stool, that Smado was not in any pain or discomfort, and that the nurse provided Smado with additional hemoccult tests to check his stool over the next several days. Not only did James make a deliberate choice to observe Smado and have him reevaluated after the completion of the additional

hemoccult testing, but there is no "verifying medical evidence" that any delay in care caused Smado harm. *See Williams v. Liefer*, 491 F.3d 710, 714-15 (7th Cir. 2007). Rather, the only evidence in the record is that Smado's condition resolved before he saw Dr. Shah.

In response, Smado notes that although James attested that he recommended Smado see Dr. Shah within three days, his signature of the Nurse's Note was dated February 27, 2017, which is four days after Smado first reported blood in his stool. Smado further argues that his four-day delay in treatment for the blood in his stool caused him harm in the form of additional days of discomfort, stress, and agony out of concern he was bleeding internally again.

This argument is refuted by James's affidavit, in which he attests that Smado indicated he was not in any pain or discomfort when he first observed blood in his stool (Doc. 114-4 at ¶ 8). James further attested that, because the nurse provided Smado with three additional tests to be monitored each day, he advised the nurse to schedule Smado for an evaluation with Dr. Shah within three days (*Id.* at ¶ 12).

For a medical professional to be held liable under the deliberate indifference standard, he or she must respond in a way that is "so plainly inappropriate" or make a decision that is "such a substantial departure from accepted professional judgment, practice, or standards," that it gives rise to the inference that they intentionally or recklessly disregarded the prisoner's needs. *Holloway v. Delaware Cty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012); *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008) (quoting *Sherrod v. Lingle*, 223 F.3d 605, 611 (7th Cir. 2000)). In other words, a prison medical professional is "entitled to deference in treatment decisions unless no minimally competent

professional would have so responded under those circumstances." *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011) (citation omitted).

Construing the evidence in the light most favorable to Smado, the Court finds he has not established that James was deliberately indifferent to his serious medical need. James attested that he was aware of the blood in Smado's stool and that Smado had been given additional testing strips to be monitored each day. James then used his professional judgment to observe Smado and to have Smado follow up with Dr. Shah within three days. Additionally, there is no evidence that Smado was harmed by any delay in treatment, as his condition resolved before he even saw Dr. Shah.

For these reasons, the Court finds that Defendant Travis James is entitled to summary judgment.

## CONCLUSION

For the reasons stated above, the Motion for Summary Judgment filed by Defendants Derek Rice and Travis James (Doc. 113) is **GRANTED in part and DENIED in part**. Judgment as a matter of law is **GRANTED** in favor of Defendant Travis James and **DENIED** as to Defendant Derek Rice.

This case shall proceed to trial on the issue of Defendant Rice's deliberate indifference to Plaintiff Scott Smado's serious medical need. A status conference will be set by separate order to discuss the utility of scheduling a settlement conference and dates for a final pretrial conference and trial setting.

**IT IS SO ORDERED.**

**DATED:    October 28, 2020**

s/ Mark A. Beatty
**MARK A. BEATTY**
**United States Magistrate Judge**